FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 17, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MIGUEL A. G.,<br><br>                Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                Defendant. | NO: 1:19-CV-03067-RHW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Jeffrey R. McClain. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is granted and Defendant's Motion, ECF No. 3, is denied.

ORDER - 1

## JURISDICTION

Miguel A. G. (Plaintiff) filed for disability insurance benefits on August 25, 2015, and for supplemental security income on October 23, 2015, alleging in both applications an onset date of March 10, 2014. Tr. 240-47. Benefits were denied initially, Tr. 164-70, and upon reconsideration, Tr. 172-84. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on August 8, 2017. Tr. 64-100. On March 8, 2018, the ALJ issued an unfavorable decision, Tr. 12-34, and on February 12, 2019, the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 49 years old at the time of the hearing. Tr. 68. He went to school through the tenth grade. Tr. 69. He has work experience doing seasonal work in the agricultural industry. Tr. 70. Plaintiff testified he has pain in his right shoulder from a torn rotator cuff and if he moves it too much it gives out and hurts. Tr. 84-85, 87. He declined surgery because he is "scared to death" of having surgery. Tr. 87.

//

//

ORDER - 2

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally

ORDER - 3

bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from

ORDER - 4

"any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is

ORDER - 5

not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 10, 2014, the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: right shoulder

ORDER - 6

acromioclavicular arthritis and tear of the supraspinatus tendon with probably labral tear, and degenerative joint disease; affective disorder; and obesity. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> He can never crawl or climb ladders, ropes, or scaffolds, but can occasionally perform each of the other postural movements. He can frequently reach in all direction with his right upper extremity, and has no limitations on the left upper extremity. The claimant is able to perform the basic mental demands of competitive, unskilled work, including the ability to understand, remember, and carry out simple instructions; he can respond appropriately to supervision, co-workers, and usual work settings, and can have occasional interaction with the general public and co-workers.

Tr. 22.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 27. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that existed in significant numbers in the national economy that Plaintiff can perform such as housekeeping cleaner, small products assembler, or collator operator. Tr. 28. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 10, 2014, the alleged onset date, through the date of the decision. Tr. 29.

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability insurance benefits under Title II of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

    1. Whether the ALJ properly considered the presumption of nondisability;

    2. Whether the ALJ properly evaluated the medical opinion evidence; and

    3. Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 12 at 2.

**DISCUSSION**

**A.   Presumption of Nondisability**

Plaintiff contends the ALJ erred by finding that Plaintiff did not rebut the presumption of nondisability. ECF No. 12 at 4-5. Plaintiff was previously determined not disabled by a different ALJ on February 27, 2014, and the Appeals Council denied review of that decision on July 2, 2015. Tr. 101-13, 118-24. "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998) (citing *Lyle v. Sec'y of Health and Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)). A previous final determination of nondisability creates a presumption of continuing nondisability with respect to any subsequent unadjudicated period of alleged disability. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995); Administrative Ruling (AR) 97-4(9).

ORDER - 8

AR 97-4(9) directs adjudicators to follow a two-step inquiry in considering a prior nondisability decision. First, adjudicators must apply the presumption of continuing nondisability. *Id*. A claimant "may rebut this presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period." *Id*. Second, if the claimant rebuts the presumption, adjudicators must give effect to certain findings in the final Appeals Council or ALJ decision on the prior claim while adjudicating the subsequent claim, including findings regarding a claimant's RFC, education, or work experience. *Id*. Such findings must be adopted in determining whether the claimant is disabled for the unadjudicated period "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." *Id*

The ALJ noted the prior decision and found that Plaintiff did not overcome the presumption of nondisability. Tr. 15. The ALJ found the "overall evidence of record demonstrates that the claimant's level of functioning remained generally the same as of the alleged onset date herein." Tr. 15. Plaintiff contends the ALJ incorrectly concluded that his functioning remained "generally the same" and that his change in age category constituted a changed circumstance. ECF No. 12 at 4-5. The Court need not determine whether the ALJ erred on this issue since the case is remanded on other grounds.

ORDER - 9

However, even if the ALJ erred in finding that Plaintiff did not overcome the presumption of continuing nondisability, any error is harmless because the ALJ conducted a full analysis of the evidence and found a new, more restrictive RFC finding than the RFC developed by the first ALJ. *Compare* Tr. 22 and Tr. 109; *see Diaz v. Astrue*, No. 1:09-CV-0927 SKO, 2010 WL 3432262, at *6 (E.D. Cal. August 31, 2010) (finding harmless error when ALJ improperly concluded there were no changed circumstances rebutting the presumption of continuing nondisability because the ALJ "thoroughly reviewed the medical evidence and imposed additional RFC limitations . . . Even if the ALJ had correctly found that Plaintiff's changed circumstances rebutted the presumption of continuing non-disability, the ALJ would have had to proceed with a review of the medical evidence, as he did despite his error."); *Belcher v. Astrue*, No. 1:09CV01234 DLB, 2010 WL 2353524, at *8 (E.D. Cal. June 9, 2010) (finding harmless error when ALJ failed to cite changed circumstances and otherwise erred in applying *Chavez* because the ALJ thoroughly reviewed the medical evidence, found new severe impairments and imposed additional limitations); *see also Trofimuk v. Comm'r of Soc. Sec. Admin.*, No. 2:12-cv-2482-KJN, 2014 WL 794343, at *5 (E.D. Cal. Feb. 27, 2014) (concluding that when the ALJ relies entirely on medical evaluations conducted after a prior adjudication, the ALJ is not required to give the findings from the prior adjudication preclusive effect).

//

ORDER - 10

B.  **Medical Opinion**

Plaintiff contends the ALJ failed to properly consider the opinion of Steven Foster, M.D.  ECF No. 12 at 5-11.  Dr. Foster, a treating physician, completed a DSHS Physical Evaluation form in April 2015 and indicated a diagnosis of right shoulder pain secondary to a rotator cuff tear.  Tr. 326-30.  He indicated the severity with respect to lifting, carrying, handling, pushing, pulling, and reaching is marked, defined as a very significant interference with the ability to perform those work-related activities.  Tr. 327.  Dr. Foster opined that Plaintiff is limited to sedentary work, defined as able to lift 10 pounds maximum and frequently lift or carry lightweight articles and able to walk or stand only for brief periods.  Tr. 328.  Dr. Foster noted Plaintiff should be seen by an orthopedic surgeon but had refused in the past, so conservative treatment such as NSAIDs, muscle relaxants, and activity as tolerated was recommended.  Tr. 328.  The ALJ gave partial weight to Dr. Foster's opinion.  Tr. 27.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)."  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*.

ORDER - 11

"In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

First, the ALJ found Dr. Foster's opinion did not include any specific reaching or postural limitations despite the fact that Plaintiff's primary issue is a shoulder injury. Tr. 27. The ALJ noted that Dr. Foster was "clearly aware of the shoulder issue," and assessed a limitation to sedentary work without specific shoulder limitations. Tr. 27. The ALJ concluded that Dr. Foster "considered a sedentary rfc to be the appropriate solution," suggesting that Dr. Foster did not intend to assess any postural or reaching limitations. Tr. 27.

1         Plaintiff contends that Dr. Foster did assess manipulative limitations when he
2   assessed the severity of Plaintiff's diagnosis as a marked, or a very significant
3   interference, regarding the abilities to lift, carry, handle, push, pull, and reach.  ECF
4   No. 12 at 7; Tr. 327.  The ALJ did not discuss the severity rating assessed by Dr.
5   Foster for those functions impacted by Plaintiff's shoulder impairment.  Tr. 27, 84.
6   While an ALJ may reject an opinion that does "not show how [a claimant's]
7   symptoms translate into specific functional deficits which preclude work activity," *see*
8   *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir.1999), the ALJ's
9   failure to consider the severity rating is an oversight, particularly since the ALJ
10  referenced it at the hearing.  Tr. 27, 84.

11        Second, the ALJ found that Dr. Foster did not appear to be aware of strength
12  findings regarding Plaintiff's shoulder, referring to strength assessments of 4/5 on
13  examination and Plaintiff's performance of medium to heavy work during the
14  agricultural season.  Tr. 27.  However, Dr. Foster's examination of Plaintiff's shoulder
15  on the same day he completed the DSHS evaluation form indicate:
16  "[Patient] reports pain on palpation of the GH and AC joints of the right shoulder.
17  Limited appley scratch testing with abduction and internal rotation, MS [muscle
18  strength] 4/5 in these ranges of motion.  Mild crepitus in the right shoulder with
19  passive ROM [range of motion] testing." Tr. 336.  Thus, the ALJ is incorrect and Dr.
20  Foster was aware that Plaintiff's strength in the right arm was measured at 4/5.
21

ORDER - 13

Third, the ALJ found that Dr. Foster did not explain why a restriction to sedentary work was necessary rather than a restriction to light work. Tr. 27. An ALJ may permissibly reject a medical opinion if it does not contain any explanation of the basis for the conclusions and is not supported by treatment notes. *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). However, if treatment notes are consistent with the opinion, the opinion may not automatically be rejected because the form it is on is unaccompanied by an explanation. *See Garrison*, 759 F.3d at 1014 n.17. In particular, the treating physician's opinion "is entitled to special weight." *Lester*, 81 F.3d at 833. "The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Id*.

Although Dr. Foster did not explain the basis for the limitation to sedentary work on the DSHS form, his contemporaneous treatment notes indicate, "[Patient] localizes pain to the AC joint and states pain is greatest when lifting the arm, especially while holding something heavy. Can lift about 10 lbs without severe pain. States pushing, pulling, sorting movements also aggravate pain." Tr. 332. The form completed by Dr. Foster indicates sedentary work involves the ability to "lift 10 pounds maximum and frequently lift or carry lightweight articles," while light work

ORDER - 14

involves the ability to lift 20 pounds. Tr. 328. Under *Garrison*, Dr. Foster's opinion should not have been dismissed for lack of explanation since his treatment notes appear to support his assessment of a limitation to sedentary work.

Fourth, the ALJ noted that Dr. Foster acknowledged Plaintiff should be seen by an orthopedic surgeon but found that Dr. Foster did not take into account the "long delayed surgery" in assessing Plaintiff's functional limitations. Tr. 27. However, Dr. Foster indicated he had referred Plaintiff to an orthopedic surgeon and that even if Plaintiff did not want surgery, he should see what other treatment options might be available. Tr. 328. Dr. Foster also noted that without the willingness to be seen by a specialist, Plaintiff's only option was continued conservative treatment including NSAIDs, muscle relaxants, and "activity as can be tolerated considering the dx [diagnosis]." Tr. 328. Contrary to the ALJ's assertion, this indicates Dr. Foster considered Plaintiff's desire to avoid surgery. The inference that Dr. Foster overstated or misstated Plaintiff's limitations is based on speculation on not on substantial evidence.

The ALJ did not provide any specific, legitimate reason supported by substantial evidence for rejecting Dr. Foster's opinion. While other reasons may exist for rejecting Dr. Foster's opinion, the Court is constrained to review only those reasons asserted by the ALJ. *Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). Although the ALJ did not properly consider Dr. Foster's opinion, the Court does not direct that the

ORDER - 15

opinion should be credited. On remand, the ALJ must weigh Dr. Foster's opinion as the opinion of a treating provider, consider Dr. Foster's treatment notes, and provide legally sufficient reasons for the weight assigned to the opinion.

**C.    Symptom Claims**

Plaintiff contends the ALJ improperly rejected his symptom claims. ECF No. 12 at 11-20. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *see also Thomas v. Barnhart*, 278

ORDER - 16

F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found that Plaintiff's physical examinations have been generally stable over time and are consistent with the RFC finding. While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Second, the ALJ found that Plaintiff was noncompliant with treatment recommendations. If a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use

such failure as a basis for finding the complaint unjustified or exaggerated. *Orn*, 495 F.3d at 638.

Third, the ALJ found Plaintiff worked with the injury in the past and had a poor work history. The claimant's work record is an appropriate consideration in weighing the claimant's symptom complaints. *Thomas*, 278 F.3d at 958-59. Fourth, the ALJ found Plaintiff managed his symptoms with over-the-counter medications and conservative treatment. Claims about disabling pain are undermined by favorable response to conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008); *see also Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

All of these reasons are clear and convincing reasons which the ALJ supported with discussion and citations to the record. Regardless, in light of the need to reconsider Dr. Foster's opinion, as discussed *supra*, the ALJ should also reconsider Plaintiff's symptom testimony on remand. Whether a proper evaluation of the medical opinions can be reconciled with the ALJ's existing finding regarding Plaintiff's symptom claims is for the ALJ to decide.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. On remand, the ALJ should reconsider the opinion of Dr. Foster and give

ORDER - 18

legally sufficient reasons for the weight assigned to the opinion. The ALJ should also reevaluate Plaintiff's symptom testimony in light of the reconsidered opinion evidence.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 13, is DENIED.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** March 17, 2021.

                                              *s/ Robert H. Whaley*
                                              ROBERT H. WHALEY
                                        Senior United States District Judge